prudence, upon an exception to the general rule of navigation, he should be first well satisfied that it has foundation in law; and it will be safe for him always to act upon the assumption, that any exception that the courts can properly recognize and approve, will be one so universally known and acquiesced in by persons engaged in the navigation, that it cannot at any time be a matter of serious dispute. No master can make an exception for himself. The law alone can make it, or a usage so universal, and of such long continuance, as to have become a law of the seas. Courts of admiralty lean against these exceptions; and it would be well for those engaged in navigation to remember this principle. Such exceptions embarrass the navigation of vessels, unless they are as clear and well defined as the general rule itself, and lead to most of the marine disasters that occur.

The case in hand is one among the many instances that have been before this court. If the master of the ferry-boat had not been misled by the supposed exception to the general rule, he would have found no difficulty in clearing the schooner. The river is between one-half and three-quarters of a mile wide where the collision occurred, and was open to him. As the schooner was on her larboard tack, and in a line crossing his track as she approached the New York shore, and, as he should have seen in time that there would be danger if the Oneota kept her course, he should have ported his helm, and passed the schooner's stern, instead of attempting to pass her bow. This would have avoided all danger.

There is another difficulty the ferry-boat has to encounter in this case. By the law of New York, passed April 12th, 1848, entitled, "An act in relation to the navigation of the East river by steamboats," vessels navigating this part of the East river, up or down, are required to keep in the middle of it. This boat in her trips runs back and forth lengthwise of the river, from Peck slip to Williamsburgh, a distance of more than a mile. I have had occasion to apply this rule of navigation, during this term, in the case of the steamboat Worcester. The Bay State [Id. 1,149]. The boats of this ferry fall within this law, and are bound to conform to it. It is quite as applicable to them, for the distance they run, as to any other vessel navigating these waters.

I am satisfied, therefore, that the decree below was erroneous and must be reversed.

## Case No. 4,274.

### The EDDINGTON.

## Case No. 4,275.

### EDDS v. WATERS.

[4 Cranch, C. C. 170.] [1]

Circuit Court, District of Columbia. May Term, 1831.

Before CRANCH, Chief Judge, and THRUSTON and MORSELL, Circuit Judges.

CRANCH, Chief Judge. The defendant, having demurred generally to the whole declaration, consisting of a single count containing three distinct charges, if any one of them is actionable, the plaintiff must have judgment; for if the defendant wished to prevent the plaintiff from recovering damages for the words not actionable, he should have demurred to so much of the declaration as charges him with speaking those words.

But having, by his demurrer, admitted that he spoke all the words charged in the declaration, and some of them being actionable, the plaintiff must have judgment for the whole.

## Case No. 4,276.

### EDDY v. BADGER et al.

[8 Biss. 238; [2] 6 Reporter, 194; 10 Chi. Leg. News, 323; 24 Int. Rev. Rec. 212.]

Circuit Court, N. D. Illinois. June 18, 1878.

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]